## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| FEMHEALTH USA, Inc., d/b/a carafem, on behalf of itself, its physicians, its staff, and its patients, | ) ) ) ) | |
| | ) | **Case No.: 3:19-cv-01141** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MOUNT JULIET, TENNESSEE; KENNY MARTIN, City Manager of Mount Juliet, in his official capacity; JAMES HAMBRICK, Chief of Police of Mount Juliet, in his official capacity; JENNIFER HAMBLEN, Zoning Administrator of Mount Juliet, in her official capacity, | ) ) ) ) ) ) ) ) ) ) ) | **DISTRICT JUDGE RICHARDSON MAGISTRATE JUDGE NEWBERN** **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| CITY OF MOUNT JULIET, TENNESSEE, | ) ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEMHEALTH USA, Inc., d/b/a Carafem, | ) ) | |
| | ) | |
| Counter-Defendant | ) | |

---

## ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM OF THE CITY OF MT. JULIET, TENNESSEE

---

## I.     ANSWER

Defendants, City of Mount Juliet, Tennessee, City Manager Kenny Martin, in his official capacity only, Chief of Police James Hambrick, in his official capacity only, and Zoning Administrator Jennifer Hamblen, in her official capacity only (collectively, the "City"), by and through counsel, respond to the First Amended Complaint (the "Complaint") as follows:

### PRELIMINARY STATEMENT

1.      The City lacks sufficient information or knowledge to admit or deny the allegations contained in the first sentence of paragraph 1. The City denies that its actions at issue in the case are a "relentless attack on abortion rights" or a restriction "designed to shutter clinics that have provided safe and affordable abortion care and impose unconscionable obstacles on women" seeking abortions.

2.      Upon information and belief the City denies that plaintiff, FemHealth USA, Inc. d/b/a carafem ("carafem") opened its clinic in the City on or before March 1, 2019. The City admits that it introduced Ordinance 2019-16 (the "Original Ordinance") on March 3, 2019. The City admits that it was unaware of any other abortion clinics planning to open in the City at the time the Original Ordinance was introduced; however, the City denies that the Original Ordinance targeted carafem. The City denies the remaining allegations contained in paragraph 2.

3.      The City admits that the first sentence of paragraph 3 contains a partial quote attributed to City Commissioner Ray Justice in an article published by the Tennessean. The City admits that other City officials have been quoted in news articles but denies Plaintiff's characterization that the statements were "comparable."

4.    The City admits the allegations contained in the first sentence of paragraph 4 except that the City denies that the Amendment was finally enacted in February.  The City denies the allegations contained in the second sentence of paragraph 4.  The City admits that the Amendment identifies several justifications for the passage of the Original Ordinance and the Amendment, but the City denies that those justifications were pretextual or had the effects alleged in the Complaint.

5.    The City denies the allegations contained in paragraph 5.

6.    The City admits that carafem is the only abortion clinic in the City, that carafem brings this lawsuit under 42 U.S.C. § 1983, and that carafem purports to bring this action on behalf of its physicians and staff and patients as well as itself, but the City denies, for purposes of not waiving the defense, that carafem has standing to bring the claim on behalf of third persons. The City denies that its zoning ordinances are restrictive. The City admits that carafem seeks declaratory and injunctive relief, but denies that its zoning ordinances are unconstitutional.

### JURISDICTION AND VENUE

7.    The City admits that Plaintiff purports to assert claims under the Equal Protection and Due Process clauses of the Fourteenth Amendment of the United States Constitution but denies that it has violated the Equal Protection Clause or the Due Process Clause. The City admits the allegations contained in the second sentence of paragraph 7.

8.    The City admits that this Court has jurisdiction to entertain carafem's requests for declaratory or injunctive relief with respect to the City's zoning ordinances.

9.    The City admits the allegations contained in paragraph 9.

**PLAINTIFF**

10.     The City admits that carafem operates a facility in Mt. Juliet. The City lacks sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 10.

11.     The City admits that carafem purports to bring this action on behalf of its patients.  The City denies the remaining allegations in paragraph 11.

**DEFENDANTS**

12.     The City admits the allegations contained in paragraph 12.

13.     The City admits the allegations contained in paragraph 13. The City admits that carafem has sued City Manager Martin in his official capacity only.

14.     The City admits the allegations contained in paragraph 14. The City admits that carafem has sued Chief Hambrick in his official capacity only.

15.     The City admits the allegations contained in paragraph 15 with the clarification that the Zoning Administrator's powers are set forth in the cited sections of the Zoning Regulations of the City's Land Use Code. The City avers that the authority to enforce the City's zoning regulations is also conferred by Tenn. Code Ann. § 13-7-208. The City admits that Plaintiff has sued Ms. Hamblen in her official capacity only.

**FACTUAL ALLEGATIONS**

**Background on Abortion**

16.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 16.

17.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 17.

18.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 18.

19.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 19.

20.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 20.

21.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 21.

22.     The City admits the allegations contained in the first, second and third sentences of paragraph 22. The City lacks sufficient information or knowledge to admit or deny the allegations contained in the fourth sentence of paragraph 22.

23.     The City admits the allegations contained in the first sentence of paragraph 23. The City admits the allegations contained in the second sentence of paragraph 23 except that the City denies that the suction is "gentle." The City lacks sufficient information or knowledge to admit or deny the allegations contained in the third and fourth sentences of paragraph 23.

24.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 24.

25.     The City admits the allegations contained in paragraph 25, and avers that a nationwide study and the experience of an abortion provider in Tennessee indicate that approximately 70 percent of women prefer a medication abortion.

26.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 26.  The City avers that surgical abortions are not

recommended for certain patients with other conditions and medication abortion is the medically-indicated procedure.

<u>Carafem Opens Its Doors in Mt. Juliet</u>

27.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 27.

28.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in the first sentence paragraph 28. The City denies the allegations contained in the second sentence of paragraph 28 as stated. The City denies the allegations contained in the third sentence of paragraph 28 as stated. The City lacks sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 28.

29.      The City lacks sufficient information or knowledge to admit or deny the allegations contained in the first sentence paragraph 29. The City admits the allegations contained in the second sentence of paragraph 29, but the City denies that leases at Providence Medical Pavilion have been limited to health care providers and specialists.

30.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 30.

31.     The City admits the allegations contained in the first sentence of paragraph 31. The City admits the allegations contained in the second sentence of paragraph 31, but avers that the correct reference in this paragraph and other allegations regarding the City's zoning regulations are to Part B of the Land Development Code which sets forth the City's zoning regulations (the "Zoning Regulations"). The City avers that the provisions of Art. III, § 3-103.3(12) of the City's Zoning Regulations speak for themselves. Relevant Sections of the City's Zoning Regulations, other than the Original Ordinance and

Amendment, are attached as Exhibit A. The City further avers that the term "Professional Services-Medical" is defined in Section 2-103.3 of the Zoning Regulations as follows:

> Professional services—Medical. This activity classification is intended to include establishments primarily engaged in providing therapeutic, preventative or correctional personal treatment services on an out-patient basis by physicians, dentists, and other medical practitioners, as well as the provision of testing and analysis services. This grouping is limited and does not include the broad ranging services provided at general health care facilities such as hospitals but does include limited outpatient services provided at offices of doctors, dentists outpatient clinics, and other health care providers, whether operated for profit or otherwise.

32.     Upon information and belief, the City denies the allegations contained in the first sentence of paragraph 32. The City lacks sufficient information or knowledge to admit or deny the allegations contained in the second sentence paragraph 32.

33.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in the first sentence in paragraph 33. The City admits the allegations contained in the second sentence in paragraph 33 except that the City lacks sufficient information or knowledge to admit or deny the allegation that the press release was dated February 28, 2019.

<u>Passage of the Original Ordinance</u>

34.     The City admits that members of the City Commission made statements about carafem's opening expressing the personal views of those City Commissioners. The City avers that the statements speak for themselves.

35.     The City admits that paragraph 35 contains a partial quote attributed to former City Commissioner Brian Abston in an article published by the *Tennessean*.

36.     The City admits upon information and belief that former Commissioner Brian Abston provided a statement to NewsChannel 5. The City denies that the quotation

contained in paragraph 36 accurately quotes the statement former Commissioner Abston made to NewsChannel 5.

37.     The City admits that paragraph 37 contains a partial quote attributed to City Commissioner Ray Justice in an article published by the *Tennessean*.

38.     The City admits that paragraph 38 contains a partial quote from the "Ray Justice City of Mt. Juliet Commissioner District 1" Facebook page.

39.     The City admits that paragraph 39 contains a partial quote attributed to Vice Mayor James Maness in Facebook and blog postings.

40.     The City admits that paragraph 40 contains a partial quote attributed to Mayor Hagerty in a blog post.

41.     The City admits that the Commission announced a special meeting for Sunday, March 3, 2019. The City denies the remaining allegations contained in paragraph 41.

42.     The City admits the allegations contained in paragraph 42. The City avers, however, that the application of the distance requirement resulted in an unintentional prohibition of surgical abortions within the City. The City avers that it adopted the Amendment which reduces the distance restriction and redefines how it is measured so that surgical abortion clinics could be located in certain areas within the City.

43.     The City admits the allegations contained in the first, second and fourth sentences of paragraph 43. The City avers that Mayor Hagerty is a member of the Board, and the vote to approve the Original Ordinance was 5-0.

44.     The City admits the allegations contained in paragraph 44.

45.     The City admits that no oral statements were made at the referenced meetings regarding the purpose and intent of the Original Ordinance. The City denies

that the intent of the Original Ordinance was to block access to abortion. The City avers that the intent and purpose of the Original Ordinance can be gleaned from the language of the Original Ordinance itself and from the purposes set forth in the Zoning Regulations at Sections 1-102 and 1-103 and elsewhere. The City avers that the Original Ordinance does have constitutionally permissible benefits that were promoted by the Original Ordinance and by the Amendment. The City admits that no public comments, testimony or evidence was presented at the meetings regarding the Original Ordinance.

46. The City admits the allegations contained in paragraph 46.

47. The City admits the allegations contained in paragraph 47.

48. The City admits the allegations contained in paragraph 48.

49. The City admits the allegations contained in paragraph 49.

50. The City admits the allegations contained in first sentence of paragraph 50. The City avers, however, that the distance requirement resulted in an unintentional, effective prohibition of surgical abortions within the City. The City avers that it adopted the Amendment which reduces the distance restriction and redefines how it is measured so that surgical abortion clinics could be located in certain areas within the City. The City admits the second and third sentences of paragraph 50 except that the City denies that the areas zoned I-G are unfit for a Surgical Abortion Clinic.

51. The City denies that it intended to impose a complete ban on surgical abortions within the City. The City admits that the Ordinance inadvertently had the effect of a ban on surgical abortions within the City. The City avers that it adopted the Amendment so that surgical abortion clinics could be located in certain areas within the City.

52.     The City admits that carafem engaged the services of the law firm, Waller Lansden. The City denies, however, that carafem or its counsel made an official request from the City for carafem's facility to be grandfathered in under the previous zoning ordinance until such a request was received on January 31, 2020.

53.     The City lacks sufficient information or knowledge to admit or deny the allegations contained in the first sentence of paragraph 53. The City denies the allegations contained in the second sentence of paragraph 53.

<u>Passage of the Amendment</u>

54.     The City admits the allegations contained in paragraph 54.

55.     The City admits the allegations contained in the first sentence of paragraph 55, but avers that the City provided notice of the Amendment through its regular notice procedures.  The City admits the allegations contained in the second sentence of paragraph 55.

56.     The City admits the allegations contained in the paragraph 56.

57.     The City admits the allegations contained in the first three sentences of paragraph 57.  The City denies the allegations contained in the fourth sentence of paragraph 57.

58.     The City admits the allegations contained in the first sentence of paragraph 58, except that the City denies that the permission to locate surgical abortion clinics in I-G zoned areas is merely "theoretical."  The City admits the allegations contained in the second sentence of paragraph 58.

59.     The City admits the allegations of paragraph 59 except that the City denies that the loosening of the distance restrictions were only apparent and not real.

60.     The City admits the allegations contained in paragraph 60 except that the City denies that the two areas zoned I-G are small.

61.     The City admits the allegations contained in paragraph 61.

62.     The City admits the allegations contained in the first sentence of paragraph 62, but denies that the location of RS-40 areas near the I-G area prevents the use of the land for a surgical abortion clinic after the enactment of the Amendment.  The City admits the allegations contained in the second sentence of paragraph 62.  The City denies the allegations contained in the third sentence of paragraph 62.

63.     The City admits the allegations contained in paragraph 63.

64.     The City admits the allegations contained in paragraph 62, but denies that the location of the residential areas near the I-G area prevents the use of the land for a surgical abortion clinic after the enactment of the Amendment.

65.     The City is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 65.

<u>The Original Ordinance Was Enacted with the Impermissible Purpose of Blocking Abortions</u>

66.     The City denies the allegations contained the first and second sentences of paragraph 66. The City avers that whatever the personal opinions of members of the Board may have been, it has not stopped carafem from operating a clinic in the City and has issued permits for carafem to occupy space in the City from which it provides services, including medical abortions.

67.     The City denies the allegations contained in the first sentence in paragraph 67.  The City admits that carafem is barred from offering surgical abortions at its Mt.

Case 3:19-cv-01141   Document 42   Filed 02/27/20   Page 11 of 23 PageID #: 511

Juliet facility. The City denies the remaining allegations contained in the second sentence in paragraph 67.

<u>The Purported Justifications for the Original Ordinance are Merely Pretextual</u>

68.     The City admits that three justifications for the Original Ordinance were advanced in the Amendment. The City denies the remaining allegations contained in paragraph 68.

69.     The City admits the allegations contained in the first sentence of paragraph 69. The City denies that the Amendment does not further any interest in patient safety. The City is without information sufficient to form a belief as to the truth of the remaining allegations contained in the second sentence of paragraph 69.

70.     The City is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 70.

71.     The City is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 71

72.     The City denies the allegations contained in paragraph 72.

73.     The City admits the allegations contained in the first sentence of paragraph 73. The City denies the allegations contained in the second and third sentences of paragraph 73.

74.     The City admits the allegations contained in the first sentence of paragraph 74. The City denies the allegations contained in the second sentence of paragraph 74.

75.     The City admits the allegations contained in paragraph 75.

76.     The City admits that there is no evidence of what would have happened in an alternative reality. The City avers that carafem has the burden of proof and it can offer no evidence that protests would not meaningfully increase if it began offering surgical

abortions which would result in the termination of potential life on its premises. The City avers that protests where carafem is currently located would almost certainly decrease in the C-I district if it relocated to an I-G district, and the negative effect of the protests on other businesses and individuals would be lessened if carafem relocated to an I-G district.

77.     The City admits the allegations contained in the first sentence except that the City avers that the "vacant lot" is about to be occupied by a Residence Inn which is nearing completion. The City denies the allegations contained in the second sentence of paragraph 77. The City denies that the Original Ordinance provided a heckler's veto because surgical abortion clinics were never permitted in C-I zoning areas, the City had the obligation to provide some location where surgical abortion clinics could be located in the City, and it did not have the obligation to permit them at carafem's preferred location. The City denies the allegations contained in the fourth sentence of paragraph 77.

78.     The City denies the allegations contained in paragraph 78.

The Original Ordinance Creates an Undue Burden on Women Seeking Abortion Care

79.     The City denies the allegations contained in paragraph 79.

80.     The City admits the allegations contained in the first and second sentences of paragraph 80, except that the City denies that Planned Parenthood-Nashville temporarily paused providing abortion services only due to staffing difficulties. The City is without information sufficient to form a belief as to the truth of the allegations contained in the third sentence of paragraph 80.

81.     The City admits that the wait times were discussed in recent litigation and that there was testimony as to the wait times stated in paragraph 81. The City denies that

this testimony was describing the wait times at Planned Parenthood's Nashville facility at the time the testimony was given.

82. The City denies the allegations contained in the first sentence in paragraph 82. The City lacks information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 82.

83. The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 83, except that the City denies that inter-city travel "is now required to seek an abortion."

84. The City denies that women who travel to Planned Parenthood-Nashville for abortion services face burdens greater than they would face by traveling to the City. The City lacks sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 84.

85. The City denies that the Ordinance places burdens on women seeking an abortion. The City lacks sufficient information or knowledge to admit or deny the remaining allegations contained in the first sentence and the second sentence in paragraph 85. The City admits the allegations contained in the third, fourth and fifth sentences in paragraph 85, and the City avers that other abortion providers in Tennessee have challenged the constitutionality of the 48-hour waiting period and a ruling on that challenge could occur at any time.

86. The City denies that the Ordinance causes delays in abortion access and therefor the City denies that the Original Ordinance subjects patients to increased medical risk. The City lacks sufficient information or knowledge to admit or deny the remaining allegations contained in paragraph 86.

87. The City denies the allegations contained in paragraph 87.

88.   The City denies the allegations contained in paragraph 88.

### The Original Ordinance Denies carafem and Its Patients Equal Protection Under the Law

89.   The City denies the allegations contained in paragraph 89.

90.   The City admits that the Ordinance only governs the location of surgical abortion clinics. The City denies that there are medical practitioners similarly situated to providers of surgical abortion. The City is without information sufficient to form a belief as to the truth of the allegations that surgical abortions are safe. The City denies the allegations contained in the second sentence of paragraph 90.

91.   The City admits that the City's Zoning Regulations, including the Ordinance and the Amendment, prevent practitioners from offering surgical abortion procedures within C-I districts. The City lacks sufficient information or knowledge to admit or deny the remaining allegations contained in the first and second sentences in paragraph 91. The City denies the allegations contained in the third sentence in paragraph 91 because the City's Zoning Regulations prohibit all medical practitioners from providing surgical abortions in the Providence Medical Pavilion.

92.   The City denies the allegations contained in paragraph 92.

93.   The City denies the allegations contained in paragraph 93.

94.   The City denies the allegations contained in paragraph 94.

95.   The City denies the allegations contained in paragraph 95.

96.   The City denies the allegations contained in paragraph 96.

### The Original Ordinance is Arbitrary, Capricious, and Lacks Any Rational Basis

97.   The City denies the allegations contained in paragraph 97.

### Carafem and Its Patients Are Being Irreparably Harmed by the Original Ordinance

98.     The City denies the allegations contained in the first sentence of paragraph 98. The City lacks sufficient information or knowledge to admit or deny the allegations contained in the second sentence of paragraph 98.

99.     The City is without information sufficient to form a belief as to the truth of the allegations contained in paragraph 99.

100.    The City denies that it has denied time-sensitive medical care, and thus the City denies that it has caused women irreparable injury.  the allegations contained in the first sentence of paragraph 100. The City admits that there is only one other abortion clinic in the Nashville metropolitan area at the time this answer is filed. The City lacks sufficient information or knowledge to admit or deny the remaining allegations contained in the second sentence of paragraph 100.

101.    The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 101.

102.    The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 102.

103.    The City lacks sufficient information or knowledge to admit or deny the allegations contained in paragraph 103.

104.    The City denies the allegations contained in paragraph 104.

105.    The City denies the allegations contained in paragraph 105.

## CAUSES OF ACTION

## COUNT 1 – SUBSTANTIVE DUE PROCESS: UNCONSITUTIONAL PURPOSE OF IMPOSING AN UNDUE BURDEN

106.    The City incorporates its responses to paragraphs 1-105 as if fully set forth herein.

107.     The City denies the allegations contained in paragraph 107.

108.     The City denies the allegations contained in paragraph 108.

## COUNT 2 – SUBSTANTIVE DUE PROCESS: UNCONSITUTIONAL EFFECT OF IMPOSING AN UNDUE BURDEN

109.     The City incorporates its responses to paragraphs 1-108 as if fully set forth herein.

110.     The City denies the allegations contained in paragraph 110.

111.     The City denies the allegations contained in paragraph 111.

## COUNT 3 – EQUAL PROTECTION

112.     The City incorporates its responses to paragraph 1-111 as if fully set forth herein.

113.     The City denies the allegations contained in paragraph 113.

## COUNTY 4 – SUBSTANTIVE DUE PROCESS: ARBITRARY ZONING DECISION

114.     The City incorporates its responses to paragraphs 1-113 as if fully set forth herein.

115.     The City denies the allegations contained in paragraph 115.

## PRAYER FOR RELIEF

The City denies that carafem is entitled to the relief requested.

## AFFIRMATIVE DEFENSES

1.     Pending investigation and in order to avoid waiver, the City avers that some or all of the allegations or averments in the Complaint fail to state a claim against the City upon which relief can be granted.

2.      The City asserts the defense that carafem's claims are barred in whole or in part for lack of standing to preserve this defense in the event of a change in the applicable law of standing during the pendency of this action.

3.      The City asserts the defense that surgical abortions are barred by Tennessee law to preserve this defense in the event that 2019 Tennessee Public Chapter 315 becomes effective during the pendency of this action.

4.      The City asserts the statute of limitations bars carafem's claims to the extent that carafem knew or should have known that the City's Zoning Regulations barred surgical abortion clinics in the C-I district more than one year before the original complaint was filed.

5.      The City asserts that carafem's challenges as to the constitutionality of the Original Ordinance are mooted by the City's adoption of the Amendment.  The City does not assert this defense to the extent that carafem is challenging the constitutionality of the City's Zoning Regulations or the Original Ordinance as amended by the Amendment.

7.      The City avers that it is entitled and seeks herein to recover the attorney fees and expenses incurred in the defense of this action as provided by 42 U.S.C. § 1988.

8.      The City reserves the right to amend this Answer as provided by the Federal Rules of Civil Procedure in order to assert additional defenses which might become relevant as the matter progresses.

WHEREFORE, having fully responded to the allegations and averments contained in the Complaint, the City prays that carafem's claims against the City be dismissed with all costs and attorney's fees taxed to Plaintiff.

## II. COUNTERCLAIM FOR DECLARATORY RELIEF

In this counterclaim, all terms defined in the amended complaint or the City's answer thereto shall have the same meaning herein. For its counterclaim against carafem, the City alleges as follows:

1.     The City is a municipal corporation organized and existing under the laws of the State of Tennessee.

2.     Carafem is a 501(c)(3) nonprofit organization registered in the District of Columbia.

3.     Carafem brought its Complaint and Amended Complaint in this action against the City alleging that it should be allowed to provide surgical abortion services at the Providence Medical Pavilion (the "Pavilion") at 5002 Crossings Circle in the City.

4.     Carafem based its action on the United States and Tennessee Constitutions. Carafem alleges that certain provisions of these constitutions require the City to permit carafem to provide surgical abortions to patients at the Pavilion.

5.     The City's Zoning Regulations govern uses to which property may be put in the City of Mt. Juliet. Relevant portions of the Zoning Regulations are attached hereto as Exhibit A or as exhibits to carafem's Amended Complaint and are incorporated by reference herein.

6.     The Pavilion is zoned C-I under the City's Zoning Regulations and maps.

7.     Professional Services-Medical is a use permitted without condition in the C-I district under Section 6.102.1 of the Zoning Regulations. (Exhibit A, pp. Zoning062, 065).

Case 3:19-cv-01141   Document 42   Filed 02/27/20   Page 19 of 23 PageID #: 519

8.     "Professional Services-Medical" is defined in Section 2-103.3 of the Zoning Regulations as follows:

> Professional services—Medical. This activity classification is intended to include establishments primarily engaged in providing therapeutic, preventative or correctional personal treatment services on an out-patient basis by physicians, dentists, and other medical practitioners, as well as the provision of testing and analysis services. This grouping is limited and does not include the broad ranging services provided at general health care facilities such as hospitals but does include limited outpatient services provided at offices of doctors, dentists outpatient clinics, and other health care providers, whether operated for profit or otherwise.

(Exhibit A, p. Zoning015).

9.     The City contends that surgical abortion services are not within the definition of "Professional services-Medical" because surgical abortion services are neither therapeutic, preventative or correctional in nature.

10.     In 2019, the City adopted the Original Ordinance which created a new activity classification for surgical abortion clinics. (Doc. 36-1, PageID# 306). Surgical abortion clinics are only permitted to operate within I-G and I-S zoning classifications with certain restrictions.

11.     Carafem had not applied for any of the necessary permits to occupy and use its space in the Pavilion at the time the City Commission introduced the Original Ordinance and passed it on first reading on March 3, 2019.

12.     The creation of a use classification of surgical abortion clinics separate from the "Professional Services-Medical" classification removed any basis for claiming that the provision of surgical abortion services was included in the use category of "Professional Services-Medical." The City denies that surgical abortion services was ever permitted as "Professional Services-Medical."

13.     Upon information and belief, carafem has claimed and continues to claim that it is entitled to provide surgical abortion services in the Pavilion as a form of "Professional Services-Medical."

14.     Article XIII of the City's Zoning Regulations (Exhibit A, pp. Zoning077-084) and Tenn. Code Ann. § 13-7-208 both permit uses that were permitted prior to a zoning change to continue after a zoning change under certain circumstances.

15.     The City contends that these "grandfathering" provisions do not authorize carafem to provide surgical abortion services at the Pavilion because such services were never permitted uses at the Pavilion.

16.     Upon information and belief, carafem contends that it is entitled to provide surgical abortion services at the Pavilion pursuant to the "grandfathering" or nonconforming use provisions of Article XIII of the City's Zoning Regulations and/or Tenn. Code Ann. § 13-7-208.

17.     An actual case or controversy exists between the City and carafem with respect to the proper interpretation of the City's Zoning Regulations and Tenn. Code Ann. § 13-7-208.  If any of these issues are resolved in carafem's favor, the Court would not be required to address carafem's constitutional claims.

18.     This Court has jurisdiction to determine this controversy under the supplemental jurisdiction provisions of 28 U.S.C. § 1367(a).

19.     This Court has the power to determine these controversies and provide declaratory relief for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, Rules 57 of the Federal Rules of Civil Procedure, and the general legal and equitable powers of this Court.

WHEREFORE, as a result of the foregoing, the City would respectfully request that this Honorable Court award a judgment to City as follows:

A. Issue a declaratory judgment that carafem is not authorized to provide surgical abortion services at the Pavilion under either the provisions of the Zoning Regulations or Tenn. Code Ann. § 13-7-208.

B. Grant such other and further relief as this Court may deem just, proper and equitable.

Respectfully submitted,

/s/ *Mark E. McGrady*
Kristin E. Berexa, BPR # 14833
Mark E. McGrady, BPR #30026
Cassandra M. Crane, BPR #34889
**FARRAR & BATES, LLP**
211 Seventh Avenue North, Suite 500
Nashville, TN 37219
Phone: (615) 254-3060
Facsimile: (615) 254-9835
kristin.berexa@farrar-bates.com
mark.mcgrady@farrar-bates.com
casey.crane@farrar-bates.com
*Counsel for the City of Mount Juliet, Tennessee*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this the 27th day of February, 2020 a true and correct copy of the foregoing has been forwarded via U.S. District Court's electronic notification system to:

Thomas H. Castelli, BPR # 024849
Legal Director
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
tcastelli@aclu-tn.org
*Counsel for Plaintiff*

Andrew D. Beck
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
Phone: (212) 549-2633
abeck@aclu.org
*Counsel for Plaintiff*

Elizabeth P. Gray
Heather M. Schneider
Tara L. Thieme
Vanessa Richardson
Devon W. Edwards
Sruti Swaminathan
WILLKIE FARR & GALLAGHER, LLP
787 Seventh Avenue
New York, NY 10019-6099
hschneider@willkie.com
Phone: (212) 728-8187
Facsimile: (212) 728-9187
*Counsel for Plaintiff*

/s/ *Mark E. McGrady*
Mark E. McGrady